O

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

| | | |
|---|---|---|
| **J. WYLIE HARRIS, JR. AND** | § | |
| **JACK E. HAVARD,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. V-05-02** |
| | § | |
| **TOM BROWN, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

**MEMORANDUM & ORDER**

Pending before the Court is Defendant Tom Brown, Inc.'s Motion to Dismiss (Dkt. #6).

Upon reviewing the motion, the response, and the applicable law, the Court is of the opinion that

Defendant's motion should be DENIED.

**Factual and Procedural Background**

Plaintiffs Jack E. Havard, a citizen of Texas, and J. Wylie Harris, Jr., a citizen of Arkansas,

filed this lawsuit against Defendant seeking damages for breach of contract and award of title to

certain oil and gas interests located in Leon County, Texas.  As of the commencement of the instant

lawsuit, Defendant has changed its name to EnCana Oil & Gas (USA), Inc. ("EnCana").  Prior to

becoming EnCana, Defendant was known as Matador E&P Company ("Matador").  Plaintiffs'

complaint bases their request for relief upon two alleged agreements with Matador.

During the late 1970s, Plaintiffs acquired oil and gas leases for certain lands in Leon County,

Texas ("Leases").  Plaintiffs later assigned their Leases to Search Drilling Co. ("Search").  In 1983,

Plaintiffs reacquired the Leases from Search through an Assignment of Oil and Gas Leases dated

August 10, 1983 ("Search Assignment").  The Search Assignment states that it was executed

pursuant to a May 18, 1983 letter agreement between Search and the Plaintiffs ("Letter Agreement"). According to the Defendant's interpretation of the Search Assignment, Search reserved an overriding royalty interest of 1/16 or 6.25% of the oil and gas produced from the Leases. Search's reservation converts to a 10% working interest after payout of a well. In other words, Search reserved an interest which would entitle it to 1/16 of the oil and gas produced from a well until such time as the parties who paid the cost of the well (i.e., "the working interest owners") recovered the money they had expended in drilling the well. Once the cost of drilling the well was recovered, Search would then become a working interest owner and begin paying 10% of the well's operating costs in exchange for a proportionate share of the oil and gas production.

On March 6, 2001, Plaintiffs assigned the Leases to Matador through two Assignments of Oil, Gas and Mineral Leases ("Matador Assignments"). Through the Matador Assignments, Plaintiffs reserved a 25% overriding royalty interest which was to absorb all "leasehold burdens" existing on the date of the assignment. This would ensure that Matador would receive the remaining 75% of production.

EnCana retained an attorney, Bill Whitehurst ("Whitehurst"), to advise EnCana as to the identity of legal owners of the gas proceeds. Whitehurst credited the Plaintiffs with what he considered to be their proper interests. Plaintiffs apparently disputed Whitehurst's interpretation. Additionally, Plaintiffs have produced a document entitled "First Amendment to Agreement" ("Amendment") dated August 4, 1983. Plaintiffs apparently assert that this Amendment changes the initial Letter Agreement in a manner which is highly favorable to them vis a vis Search in light of the Plaintiffs' interpretation of how the reservation in the EnCana Assignment should be executed. Plaintiffs do not contest Defendant's assertion that the Plaintiffs interpret the Amendment

as having the effect of changing the interest reserved in the Search Assignment so that it is an overriding royalty until payout in the first well only, and is thereafter a working interest in that well and any subsequent wells.

Complicating matters further, while EnCana was attempting to resolve the many issues raised by the Plaintiffs, it was contacted by Walter L. Farrington, III ("Farrington") of Dallas, Texas. Farrington presented EnCana with an Assignment of overriding Royalty Interest from Search to Farrington, executed May 21, 2004 but effective January 1, 2003 ("Farrington Assignment"). The Farrington Assignment purports to assign to Farrington the interest reserved by Search in the Search Assignment.

Plaintiffs filed the instant lawsuit on January 4, 2005, alleging that the Defendant, EnCana's predecessor, breached two agreements by failing to assign leasehold rights to the Plaintiffs or to pay them revenue derived from those leasehold rights.

## Discussion

Defendant has moved to dismiss the lawsuit against it on two grounds: (1) failure to join an indispensable party pursuant to FED. R. CIV. P. 12(b)(7); and (2) improper venue pursuant to FED. R. CIV. P. 12(b)(3).

## I.    Indispensable Party Argument is Moot

Initially, Defendant moved to dismiss on the ground that Farrington was a necessary party under FED. R. CIV. P. 19(a)(2) who could not be joined without destroying the Court's diversity jurisdiction. On July 14, 2005, Defendant informed the Court via letter that EnCana and Farrington reached an agreement whereby EnCana would purchase Farrington's interest in the property which is the subject of this case. Defendant indicated that this would render its motion to dismiss moot to

3

the extent that it sought dismissal for lack of complete diversity.  Therefore, the Court will only

address Defendant's venue argument.

**II.      Whether Venue Is Proper Pursuant to FED. R. CIV. P. 12(b)(3)**

Defendant has also moved to dismiss on the ground that this district is not the proper venue

under 28 U.S.C. § 1391(a).  Under 28 U.S.C. § 1391(a) venue in a diversity suit lies against a

corporate defendant in any district where the corporation "resides" at the time the action is

commenced.  Pursuant to 28 U.S.C. § 1391(c) a corporation is deemed to reside in any district in

which it would be subject to personal jurisdiction if that district were a separate state.  General

jurisdiction may be asserted when a defendant's contacts with the forum state are substantial and

"continuous and systematic" even if unrelated to the instant cause of action.  *Central Freight Lines*

*Inc. v. APA Transport Corp.*, 322 F.3d 376, 380 (5th Cir. 2003) (quoting *Helicopteros Nacionales*

*de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8, 104 S. Ct. 1868 (1984)).

Because venue is determined based upon where the defendant resides at the time the action

is commenced, the Court must examine the contacts of EnCana, not just those of the Defendant, Tom

Brown, Inc.  As noted in its answer, Defendant merged with EnCana as of January 1, 2005.  EnCana

owns leasehold interests in two counties located within the Southern District of Texas, San Patricio

and Wharton.  EnCana also operates seven oil and gas wells in those counties.  Defendant states that

it did not have an office in the Southern District of Texas.  However,  it also states that EnCana

dooes not have an office in the *Victoria Division*.  Section 1391(a)(1) speaks in terms of districts and

not divisions.  *See Dow AgroSciences LLC v. Bates*, 2002 WL 1205143, at *4 (N.D. Tex. March 12,

2002).  The Court draws the inference that though EnCana does not have an office in the Victoria

Division, it does maintain an office in the Southern District of Texas.  So long as EnCana has an

office in the Southern District, it matters not that it does not have an office in the Victoria Division.

The Court must now determine whether EnCana's contacts suffice to satisfy the personal jurisdiction

standard such that suit may be brought against Defendant in the Southern District of Texas.

Defendant argues that EnCana's two leasehold interests and its seven wells do not meet the

substantial activity requirement. Defendant reasons that EnCana is a large company that owned

6,700 wells in the United States at the end of 2004. It argues that the seven wells located in the

Southern District of Texas constitute about one-tenth of one percent of the wells owned by EnCana.

In other words, in light of the size of EnCana's national operations, Defendant argues that its

activities in the Southern District of Texas are insubstantial and do not warrant the exercise of

personal jurisdiction for claims unrelated to those activities.

Defendant's reasoning is unpersuasive. The issue before the Court is whether Defendant

maintains sufficient contacts in the Southern District of Texas, not whether those contacts are

sufficient when compared with the Defendant's national operations. Within the Southern District,

EnCana maintains an office, owns two leasehold interests, and owns seven wells. With respect to

the wells, at least six of them and possibly seven are in continuous production.[1] The evidence also

indicates that there are continuous sales of condensate and natural gas from these wells to various

purchasers.[2] The Court is of the opinion that EnCana's contacts with the Southern District of Texas

are substantial, continuous, and systematic.

Defendant's assertion that the property in question is located in Leon County in the Western

---

[1] Plaintiff's Response to Defendant's Motion to Dismiss, Exhibit B, Affidavit of Ronald G. Byrnes, pp. 1-2.

[2] *Id.*

District of Texas, Waco Division does not entitle it to dismissal.  The Court has determined that

Defendant is subject to general personal jurisdiction in the Southern District of Texas, therefore

venue lies in the Southern District irrespective of the location of the property.

### Conclusion

For the reasons explained above, Defendant's Motion to Dismiss (Dkt. #6) is DENIED.

It is so ORDERED.

Signed this 24th day of August, 2005.


_____

JOHN D. RAINEY

UNITED STATES DISTRICT JUDGE